## Case No. 11,948.

### ROBINSON v. CLIFFORD.

[2 Wash. C. C. 1.][1]

Circuit Court, D. Pennsylvania. April Term. 1807.

MARINE INSURANCE — VOYAGE BROKEN UP—WARRANT OF SURVEY—EVIDENCE—FOREIGN LAWS.

1. Where a warrant of survey was issued, and a report made thereon, that the vessel was unfit to perform the voyage, and the vessel and cargo were ordered to be sold; the captain cannot be admitted as a witness to prove the condition of the vessel at the time of the survey, and that she was unfit for the voyage. The proceeding was judicial, and the warrant and report must be produced; but the facts contained in the report may be proved by other evidence.
[Cited in People v. Lambert. 5 Mich. 360.]

2. A certificate of the registrar of the vice-admiralty court was produced, which stated that

1 [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

the warrant was lost. The certificate is not evidence, but the fact of the loss must be proved under a commission.

3. Written statutes and edicts of foreign countries must be produced; common or unwritten laws may be proved by parol.

[Cited in Charlotte v. Chouteau, 25 Mo. 473; Lattourett v. Cook, 1 Iowa, 1.]

This was an action brought on a policy, on the profits of a cargo on board ship Mary, at and from Batavia to New-York, on the voyage insured. The vessel having met with severe weather, by which she received considerable injury, the captain, with the approbation of his officers and crew, bore away for the West Indies, and was captured on his way thither by a British cruiser, and carried into St. Christopher's, libelled and acquitted. Upon the application of the captain to the court of admiralty for a warrant of survey of the vessel, one was granted. A survey and report were made, condemning the vessel as unfit to prosecute the voyage with her cargo; in consequence of which, both ship and cargo were sold at a considerable profit, unless a charge of a large sum for money lost on bills of exchange taken in payment, should be admitted as part of the loss. To prove the condition of the vessel at St. Christopher's, and that she was reported unfit for the voyage; the evidence of the captain was relied upon, and objected to.

BY THE COURT. This was a judicial proceeding, and in writing. The warrant and report must be produced, if you mean to rely upon them as a justification for breaking up the voyage at St. Christopher's. Parol evidence of their contents is inadmissible. But the facts contained in the report may, nevertheless, be proved by other testimony than the report.

The counsel for the plaintiff then produced a certificate from the register of the vice court of admiralty, where the proceedings took place, stating that the warrant was lost.

BY THE COURT. The proof of the loss is not properly made out. It should have been established under a commission, in the usual manner of proving other facts, and not by the certificate of the clerk. The captain, in his deposition, stated, that, according to the law of St. Christopher's, no other vessel could have been permitted to bring away the cargo.

This was objected to, as the law itself should have been produced.

BY THE COURT. The statute or written law of foreign countries, should be proved by the law itself, as written. The common customary or unwritten law, may be proved by witnesses acquainted with the law. In this case, it does not appear whether the law alluded to by the witness, was written or unwritten. From the very nature of it, I presume it to be the former. The prohibition of other vessels to carry away a cargo situated as this was, would naturally be a subject of

positive municipal law, from political or other considerations of state.

Mr. Tilghman having inquired of the judges, before the above question was decided, but after it had been argued, whether they would allow the item in his account of a loss on protested bills, to go to the jury, without proof; and being answered, that, as soon as he should arrive at that item in his account, he would be called upon to prove it, or the jury would be instructed to disregard it; he consented to be nonsuited, saying that he had no proof of it, and that if that item were struck off the account, he acknowledged no loss had been sustained.